IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYRON WARD,<br>    Plaintiff, | |
| v. | Civil Action No. 04-11E<br><br>Judge McLaughlin<br>Magistrate Judge Baxter |
| JOHN J LAMANNA, ET AL., | *(Electronic Filing)* |
|     Defendants. | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE
ALTERNATIVE MOTION FOR SUMMARY JUDGEMENT**

Defendants, by their attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, Christy Criswell Wiegand, Assistant U.S. Attorney, and Douglas S. Goldring, Assistant General Counsel for Federal Prison Industries, Inc., respectfully file this Reply Brief in support of their Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, for Summary Judgment ("Defendants' Motion to Dismiss").

**I.      Plaintiff's Constitutional Rights Were Not Violated by the Conditions in the UNICOR Factory at FCI McKean**

In his Affidavit in Opposition to Defendants' Motion to Dismiss, Plaintiff appears to contend that because exposure to crystalline silica, an ingredient in Micore Boards, can hypothetically cause various medical conditions, his medical ailments must be related to crystalline silica exposure in the UNICOR factory in FCI McKean.  However appealing Plaintiff's argument may be on its face, it is clear that Plaintiff's allegations cannot satisfy the requirements of either the objective or subjective prongs of the Eighth Amendment test.  Helling v. McKinney, 509 U.S. 25 (1993).

The Eighth Amendment requires a court not only to make a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to the contaminant, but also "to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose <u>anyone</u> unwillingly to such a risk." <u>Helling</u>, at 36 (emphasis in original).[1]

Although crystalline silica, an ingredient in Micore Boards, is classified as a human carcinogen, respirable silica was <u>not</u> detected in 2001 by Microbac Laboratories or in 2003 by Occupational Safety and Health Administration ("OSHA") inspectors. <u>See</u> Exhibit 2 attached to Defendants' Motion to Dismiss (Declaration of Steven Housler), at ¶¶ 12-13 and 18, Attachments C and E). Indeed, with respect to all of the chemical components of Micore Board, the OSHA inspectors determined that no UNICOR worker's exposure exceeded 10% of the relevant exposure limit. <u>See</u> Exhibit 2 attached to Defendants' Motion to Dismiss, at ¶ 18, Attachment E. Thus, OSHA determined that Plaintiff and other workers were not exposed to inappropriate levels of contaminants in the UNICOR factory. It was entirely reasonable for FCI McKean to rely on available air quality test results to determine what, if any, safety equipment it needed to make available for staff and inmates assigned to the UNICOR factory. Plaintiff simply cannot, in this case, "show that he himself is being exposed to unreasonably high levels of"

---

[1] It is well settled that if a constitutional claim is covered by a specific constitutional provision, it must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. <u>See</u> <u>U.S. v. Lanier</u>, 520 U.S. 259, 272 n.7 (1997). Any substantive due process claim raised by Plaintiff as a result of his alleged exposure to silica dust relates to a specific government behavior against which the Eighth Amendment explicitly protects. <u>Helling v. McKinney</u>, 509 U.S. 25 (1993). As such, Plaintiff cannot obtain relief pursuant to the Fifth Amendment Substantive Due Process Clause, and this claim must be dismissed with prejudice.

harmful substances, as required by Helling, where the UNICOR facility is in compliance with the relevant federal air quality standards. OSHA standards reflect contemporary standards of decency – our society willingly exposes free citizens and inmates alike to toxins, chemicals, and particulates up to the threshold values established by OSHA. The Court may not hold Defendants to a higher standard than that required by federal agencies who are charged with monitoring workplace safety. See, e.g., Wooten v. Goord, 2004 WL 816919 (W.D.N.Y., Mar. 25, 2004), aff'd., 2005 WL 387971 (2nd Cir., Feb 17, 2005); Saahir v. Holligan, 2004 WL 1418790 (N.D. Tex., June 24, 2004). Therefore, Plaintiff cannot, and has not, established the objective prong of the Eighth Amendment test, and his Eighth Amendment claim must be dismissed.

Furthermore, Plaintiff cannot show that Defendants were deliberately indifferent to his health. Defendants took all necessary steps to ensure compliance with OSHA standards in the UNICOR factory. Even if compliance with OSHA standards was not sufficient to insulate Defendants from being deemed deliberately indifferent, however, Defendants also relied on, and acted consistently with, the applicable MSDS sheets and product warning labels in determining what protective equipment to provide for UNICOR employees. MSDS sheets are required to, and do, list risks associated with overexposure to various chemicals. More importantly, however, the MSDS sheets set forth what precautions, if any, must be taken in order to protect against such risks. See Exhibit 2 attached to Defendants' Motion to Dismiss, at ¶ 33. Defendants' decisions regarding the UNICOR work environment and protective equipment were consistent with the MSDS sheets and with product warning labels. See Exhibit 2 attached to Defendants' Motion to Dismiss, at ¶¶ 32-36, and Attachment I.

Therefore, Plaintiff cannot, and has not, established either the objective or the subjective prong of the Eighth Amendment test, and the Court should grant Defendants' Motion To Dismiss.[2]

Finally, to the extent Plaintiff alleges that he was somehow discriminated against by any of the Defendants, his complaint is entirely without merit and must be dismissed. In his Amended Complaint, Plaintiff does not assert that any of his fundamental rights have been violated, nor could he succeed in making such a showing. San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 29 (1973). Inmate work assignments do not implicate a protected liberty or property interest. See James v. Quinlan, 866 F.2d 627 (3d Cir.), cert. denied, 493 U.S. 870 (1989); Garza v. Miller, supra; Sandin v. Conner, 515 U.S. 472 (1995). Plaintiff has no constitutional right to a particular work assignment, let alone a constitutional right to a respirator. Accordingly, no fundamental right is at stake for purposes of equal protection analysis.

Nor has Plaintiff asserted that the basis of the alleged unequal treatment was his membership in a suspect class for purposes of equal protection analysis. Prisoners as a group do not constitute a suspect class for purposes of equal protection analysis. Abdul-Akbar, 239 F.3d at 317 (citing Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir. 1990)). Because Plaintiff is not a member of a suspect class and no fundamental right is at stake, strict scrutiny is not the appropriate test. The Court must evaluate his equal protection claim under rational basis review.

---

[2] Because, for the reasons stated above, Plaintiff cannot establish that any of his clearly established Constitutional rights were violated, the Defendants are all entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194 (2001); Anderson v. Creighton, 483 U.S. 635 (1987); Harlow v. Fitzgerald, 457 U.S. 800 (1982); Butz v. Economou, 438 U.S. 478 (1978).

In order to bring a successful claim for a denial of equal protection when the plaintiff does not allege membership in a suspect class or substantial interference with a fundamental right, a plaintiff must show that he has been intentionally treated differently from others similarly situated to him and that there is no rational basis for the difference in treatment.  See, e.g. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Little v. Terhune, 200 F. Supp.2d  445, 450 (D.N.J. 2002).

Assuming, arguendo, that two prisoners can be similarly situated for purposes of equal protection analysis, Plaintiff has failed to allege that he is similarly-situated to the other inmate who allegedly used a respirator. Despite having been given the opportunity to file an Amended Complaint, Plaintiff has not provided the identity or any description of the other inmate who was allegedly provided with a respirator. Even if he were able to show that he is similarly situated to the other prisoner who was given a respirator, Defendants had a rational reason for distinguishing between the two inmates. Specifically, the other inmate Plaintiff saw requested a respirator from the Safety Department at FCI McKean.  See Exhibit 2 attached to Defendants' Motion to Dismiss, at ¶ 39.  Plaintiff never requested a respirator from the Safety Department.  See Exhibit 2 attached to Defendants' Motion to Dismiss, at ¶ 40; Exhibit 1 attached to Defendants' Motion to Dismiss (Declaration of Martin Sapko), at ¶ 12.  According to Defendant Housler, however, if Plaintiff, or any other inmate, had requested a respirator, he would have been provided with one. See Exhibit 2 attached to Defendants' Motion to Dismiss, at ¶ 40.  The only reason Plaintiff was not provided with a respirator was that he never requested one from the Safety Department.  See Exhibit 2 attached to Defendants' Motion to Dismiss, at ¶ 40; Exhibit 6 attached to Defendants' Motion to Dismiss (Declaration of David English), at ¶¶ 8-9; Exhibit 1 attached to Defendants'

Motion to Dismiss, at ¶ 12.

Accordingly, Plaintiff had no entitlement to a respirator, nor can he allege that he was improperly denied necessary safety equipment. Therefore, his equal protection claim must be dismissed for failure to state a claim upon which relief can be granted.

## II.     Defendants Did Not Retaliate Against Plaintiff for Exercising His First Amendment Rights

Plaintiff's brief provides no new evidence, and makes no new allegations to support his claim that Defendant Watson retaliated against him for exercising his First Amendment rights. In order to make out a prima facie case of retaliation, Plaintiff must show that "(1) the conduct in which he was engaged was constitutionally protected; (2) he suffered 'adverse action' at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Carter v. McGrady, 292 F.3d 152, 157-58 (3rd Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3rd Cir. 2001). Even if a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, prison officials will still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. See Rauser, 241 F.3d at 334.

Plaintiff first alleges that "[w]hen the Plaintiff initially submitted theses [sic] BP-8(s), the Plaintiff was told by Defendant Ned Watson that he would be sending the BP-8(s) back blank." See Plaintiff's Affidavit in Opposition, pp. 4-5. The circumstances of Plaintiff's informal resolution are detailed in the declaration of Ned Watson, who was Plaintiff's Correctional Counselor, as well as in Defendants' Motion to Dismiss. Defendant Watson provided complete

6

and timely responses to each of Plaintiff's requests for informal resolution.  See Exhibit 4 attached to Defendants' Motion to Dismiss (Declaration of Ned Watson), at ¶¶ 5-13, and Attachments B and C. Plaintiff's pursuit of the Administrative Remedy process was in no way prejudiced by any of Defendant Watson's actions, and he was not otherwise adversely affected by the handling of the informal resolutions.  As such, there is no basis for this portion of the retaliation claim.

Plaintiff also claims that he was required to attend several meetings in which various staff members instructed him not to file any additional Administrative Remedies.  See Plaintiff's Affidavit in Opposition, p. 5.  Again, however, Plaintiff's contention is not supported by the evidence. Defendant Watson did meet with Plaintiff in the UNICOR factory to clarify the issues raised in Plaintiff's requests for informal resolution.[3]  Although several staff members may have walked in and out of the room while Plaintiff and Defendant Watson spoke, none of them took any part in the conversation. See Exhibit 4 attached to Defendants' Motion to Dismiss, at ¶ 8. Additionally, Defendant Watson subsequently spoke with Plaintiff informally to advise him that he planned to wait until after the completion of the OSHA inspection to respond to the information resolutions.  See Exhibit 4 attached to Defendants' Motion to Dismiss, at ¶¶ 10-13.

Plaintiff's Administrative Remedies were all submitted after these conversations – and any other meetings alleged in the Amended Complaint – may have taken place.  It is clear, therefore, that, even if the allegations in the Amended Complaint are presumed to be true, they had absolutely no effect on Plaintiff's ability to exercise his First Amendment rights, see Exhibit

---

[3] Such a meeting is commonplace and well within Defendant Watson's duties as Plaintiff's Correctional Counselor.  See Exhibit 4 attached to Defendants' Motion to Dismiss, at ¶ 7.

7

3 attached to Defendants' Motion to Dismiss (Declaration of Declaration of Douglas S. Goldring), at ¶¶ 5-9, and Attachment C, and cannot state a claim for retaliation. Stanley v. Litscher, 213 F.3d 340, 343 (7th Cir. 2000) (a retaliation complaint cannot survive where the alleged retaliatory acts took place prior to the grievances that Plaintiff filed.)

Thus, Plaintiff has shown no evidence of any adverse action taken by BOP staff. Nonetheless, to the extent an inference of adverse action may remain, it clearly did not prejudice Plaintiff's ability to pursue and exhaust his Administrative Remedies. See Exhibit 3 attached to Defendants' Motion to Dismiss, at ¶¶ 5-9, and Attachment C.

Finally, Defendant Watson had a legitimate penological reason for all of the actions he took with respect to Plaintiff's informal resolutions. Specifically, he is responsible for the initial stages of the Administrative Remedy program. Consistent with his responsibilities, Defendant Watson instructed Plaintiff that because his four informal resolutions were identical, they could be handled together as one request. Defendant Watson's purpose in providing Plaintiff with this information was most certainly not to prejudice Plaintiff, but to avoid repetition and to facilitate the efficient operation of the Administrative Remedy process. See Exhibit 4 Attached to Defendants' Motion to Dismiss, at ¶¶ 5-7. Subsequently, Defendant Watson met with Plaintiff in the UNICOR factory for the sole purpose of clarifying Plaintiff's issues. See Exhibit 4 attached to Defendants' Motion to Dismiss, at ¶ 8. Finally, he met informally with Plaintiff to discuss a potential delay to the informal resolutions while he awaited the conclusion of an ongoing OSHA inspection. See Exhibit 4 attached to Defendants' Motion to Dismiss, at ¶¶ 10-12. All of these actions were well within Defendants Watson's role as Plaintiff's Correctional Counselor, and are supported by the legitimate penological goal of ensuring that the Administrative Remedy

Procedure operates efficiently within the institution in order to resolve inmate grievances.

Plaintiff has provided no evidence that his ability to exercise his First Amendment rights was hindered, or that he was otherwise punished or prejudiced as a result of his exercise of his First Amendment rights. Defendants, on the other hand, have shown a legitimate penological explanation for their handling of Plaintiff's Administrative Remedy Requests. Accordingly, Plaintiff's retaliation claim must be dismissed with prejudice, and Defendant Watson, who is named solely in the second claim, must be dismissed from this action.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, for Summary Judgment, should be granted.

    Respectfully Submitted,

    MARY BETH BUCHANAN
    United States Attorney

    /s/ Christy Criswell Wiegand
    CHRISTY CRISWELL WIEGAND
    Assistant U.S. Attorney
    Western District of Pennsylvania
    U.S. Post Office and Courthouse
    700 Grant Street, Suite 4000
    Pittsburgh, PA 15219
    (412) 894-7452

OF COUNSEL:
Douglas S. Goldring
Assistant General Counsel
Federal Prison Industries (UNICOR)
400 First Street, NW, 8th Floor
Washington, DC 20534

## CERTIFICATE OF SERVICE

I hereby certify that I have served this date a copy of the within **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT** either electronically or by first-class United States mail, upon the following:

Myron Ward
Reg. No. 05967-084
FCI Petersburg
P.O. Box 1000
Petersburg, VA 23804

**Plaintiff, Pro Se**

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
Assistant U.S. Attorney

Date:   August 8, 2005