**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MYRON WARD,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 04-11 Erie** |
| | ) | **District Judge McLaughlin** |
| **JOHN LAMANNA, et al.,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Document # 45] be granted in part and denied in part.

### II.    REPORT

#### A.    Relevant Procedural History

On January 20, 2004, Plaintiff Myron Ward, an inmate formerly incarcerated at the Federal Correctional Institution at McKean ("FCI-McKean"), filed this *pro se* action, raising a civil rights claim pursuant to <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).  Named as Defendants are: former Warden John Lamanna; Deborah Forsyth; Chairperson of FCI-McKean's Safety and Health Committee; Marty Sapko, UNICOR/Industry Factory Manager at FCI-McKean; Stephen Housler, Safety Manager at FCI-McKean; and Correctional Officer Ned Watson.

In his original Complaint, Plaintiff claimed that:

> Defendants Lamanna, Forsyth, Sapko and Houseler were responsible for exposing him to hazardous substances at his UNICOR job assignment and that he did not receive adequate protective equipment. (Count I)

> Defendants Lamanna, Forsyth, Sapko and Houseler altered a Material Safety Data Sheet (hereafter, "MSDS") in violation of his rights under the Eighth and Fifth Amendments. (Count II)

>Defendants Lamanna and Watson retaliated against him. (Count III)

>Defendants Lamanna, Forsyth, Sapko and Houseler negligently managed the prison by failing to enforce Bureau of Prisons policies and regulations, failing to enforce OSHA workplace safety standards, failing to protect Plaintiff from known risks of harm and failing to protect Plaintiff from retaliation. (Count IV)

In response to the original complaint, Defendants filed a motion to dismiss, or in the alternative, for summary judgment.  Document # 17.

On February 10, 2005, this Court issued a Report and Recommendation recommending dismissal of: (i) Plaintiff's claims against Defendants in their official capacities, based upon sovereign immunity; (ii) Count II (alteration of the MSDS); and (iii) Plaintiff's procedural due process claims.  However, this Court also recommended that Plaintiff's Eighth Amendment claim, his Fifth Amendment substantive due process claim, and his retaliation claim be allowed to proceed.  Plaintiff was directed to file an amended complaint to more fully allege his Equal Protection claim.  Document # 27. On March 1, 2005, Defendants filed Objections to the Report and Recommendation. Document # 28.  By Order dated April 1, 2005, District Judge Sean J. McLaughlin adopted this Court's Report and Recommendation. Document # 29.

On April 19, 2005, Plaintiff filed a motion for appointment of counsel, which was granted by this Court on November 30, 2005.  Plaintiff's newly-appointed counsel then filed a Second Amended Complaint on January 20, 2006, adding the United States of America ("United States") as a Defendant.  Document # 44.  In his Second Amended Complaint, Plaintiff restates his Eighth Amendment deliberate indifference claim against the individual Defendants, and introduces an FTCA claim against the United States.[1]

In response to the Second Amended Complaint, Defendants have filed another motion to

---

[1] It is significant to note that, although Plaintiff makes a single reference to the Fifth Amendment in paragraph 36 of his Second Amended Complaint, there are no other allegations that may be construed to state a substantive due process claim.  As a result, this Court considers any such claim to have been dropped by Plaintiff's counsel.  Additionally, there is no mention of a retaliation claim or an Equal Protection claim in the Second Amended Complaint.

2

dismiss, or in the alternative motion for summary judgment, arguing that (i) Plaintiff has failed to establish an Eighth Amendment violation; (ii) Plaintiff's claims against Defendants Lamanna and Watson should be dismissed due to Plaintiff's failure to allege personal involvement; (iii) Plaintiff's claims against the individual Defendants are barred by the doctrine of qualified immunity; (iv) Plaintiff's FTCA claim should be dismissed for lack of subject matter jurisdiction due to Plaintiff's failure to timely exhaust his administrative remedies; or, alternatively, (v) Plaintiff's FTCA claim is barred by the Prison Industries Fund, 18 U.S.C. § 4126(c)(4).  Document # 45. Plaintiff has filed a brief in opposition to Defendants' motion, and Defendants' have filed a reply brief.  This matter is now ripe for consideration.

### B.    Relevant Factual History

Beginning in April 2002 (and ending upon his transfer to another institution on an unspecified date), Plaintiff was assigned to work in FCI-McKean's UNICOR factory. Document # 44, Second Amended Complaint.  During this time, Plaintiff "regularly handled and worked with materials commonly known as Micore board, particleboard or tac-board and worked in and around areas where such boards were being cut, sanded and routered." Document # 44, at ¶ 13. Each Micore Board bears a label, which indicates that the board may contain crystalline silica and contains the following warning:

> Dust hazard.  Cut and trim with knife, razor, or hand saw.  Do not cut with power equipment unless a dust collector is used on the equipment or local exhaust is used and a NIOSH/MSHA-approved respirator is worn.  Failure to follow these instructions may result in overexposure to airborne man-made mineral fiber.  Airborne man-made mineral fiber and crystalline silica are thought to increase the risk of lung cancer. Overexposure to dust can cause eye, skin, nose, throat or respiratory irritation.  Wear eye and skin protection.

Document # 46, Defendants' Brief, Exhibit J.

Nevertheless, the Material Safety Data Sheet maintained by the Defendants with regard to the Micore Board was altered, such that the word "respirator" was marked out and replaced with the word "mask."  Document # 44,  at ¶ 22.  Moreover, Plaintiff asserts that the factory's

3

exhaust and ventilation systems were insufficient, and the only protection provided by Defendants were disposable breathe-easy dust masks, which did not comply with the express requirements of the MSDS. Document # 44, at ¶ 24. Plaintiff claims further that he and other workers were "regularly instructed to clean machinery and work areas using pneumatic or other compressed air equipment, as well as brooms," thereby exacerbating the exposure to airborne silica dust. Document # 44, at ¶ 18.

Plaintiff also claims that, during his UNICOR work assignment, he "worked in and around areas where the adhesive commonly known as Lockweld 860/861 was being used," which exposed him "to serious risks and hazards including the risk of fire and health risks associated with the presence of fumes from Locweld 860/861." Document # 44, at ¶¶ 14, 16-18.

**C.    Standards of Review**

**1.    Motion to Dismiss - Fed.R.Civ.P. 12(b)(1)**

When a motion to dismiss is made under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction which attacks the as deficient on its face, the Court must take all allegations in the complaints as true. Mortensen v. First Federal Sav. and Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977). However, when the motion attacks the existence of subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and the Court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact. Id. at 891. See also Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000); Poling v. K. Hovnanian Enterprises, 99 F.Supp.2d 502, 515 (D.N.J. 2000).

**2.    Motion to Dismiss - Fed.R.Civ.P. 12(b)(6)**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Langford v.

4

City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974). However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997). Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted. See Swierkiewicz.

### 3.    Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317

5

(1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990), quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).  The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

**D.      The FTCA Claim**

The FTCA grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment.  See 28 U.S.C. § 2675(a).  The FTCA allows federal inmates to sue the United States for injuries

sustained while incarcerated. 28 U.S.C. § 2674. The FTCA specifically requires an initial

presentation of the claim to the appropriate federal agency and a final denial by the agency as a

non-waivable prerequisite to the filing of the lawsuit. See Deutsch v. United States, 67 F.3d

1080, 1091 (3d Cir. 1995). This requirement is set forth in 28 U.S.C. § 2675(a)[2]:

> An action shall not be instituted upon a claim against the United States
> for money damages for injury or loss of property or personal injury or
> death caused by the negligent or wrongful act or omission of any employee
> of the Government while acting within the scope of his office or employment,
> unless the claimant shall have first presented the claim to the appropriate
> Federal agency and his claim shall have been finally denied by the agency in
> writing and sent by certified or registered mail. The failure of an agency to
> make final disposition of a claim within six months after it is filed shall, at
> the option of the claimant any time thereafter, be deemed a final denial of
> the claim for purposes of this section.

Thus, presentation of an administrative claim in accordance with 28 U.S.C. § 2675(a) is

"a jurisdictional requirement and an absolute prerequisite to maintaining a civil action against

the government under the FTCA." Valenzuela v. Thrifty Rent-A-Car, 1995 WL 708109, at *3

(E.D.Pa. Nov. 20, 1995). See also McNeil v. United States, 508 U.S. 106 (1993)(FTCA bars

claimants from bringing suit in federal court until they have exhausted their administrative

remedies); Livera v. First Nat. State Bank, 879 F.2d 1186, 1194 (3d Cir. 1989)(Exhaustion of

administrative remedies is a jurisdictional requirement that cannot be waived and must be

strictly construed). An administrative claim is deemed "presented" when the federal agency

receives written notification of the alleged injuries accompanied by a claim for money damages

set forth in a sum certain. 28 U.S.C. § 14.2; see also Bialowas v. United States, 443 F.2d 1047,

---

    2 Prior to 1996, FTCA claimants had the option of filing suit in federal court without
first presenting their claims to the appropriate federal agency. Because the vast majority of
these claims were ultimately settled before trial, however, the Department of Justice
proposed that Congress amend the FTCA to "requir[e] all claims to be presented to the
appropriate agency for consideration and possible settlement before a court action could be
instituted. This procedure would make it possible for the claim first to be considered by the
agency whose employee's activity allegedly caused the damage.... Since it is the one
directly concerned, it can be expected that claims which are found to be meritorious can be
settled more quickly without the need for filing suit and possible expensive and time-
consuming litigation." S.Rep. No. 1327, 89th Cong., 2d Sess., 3 (1966), U.S. Code Cong. &
Administrative. News 1966, pp. 2515, 2517.

1049 (3d Cir. 1971).

Defendants argue that Plaintiff's FTCA claim against the United States should be dismissed for lack of subject matter jurisdiction, because Plaintiff did not fully exhaust his administrative remedies prior to the filing of the original complaint in this matter. This Court agrees.

It is beyond dispute that Plaintiff failed to exhaust his administrative remedies with regard to his FTCA claim prior to the filing of the original Complaint in this matter. Plaintiff filed his original complaint on February 6, 2004. Plaintiff did not file an administrative tort claim until April 7, 2005, after this Court had already recommended dismissal of Plaintiff's original negligence claim against the original Defendants due to the failure to exhaust.[3] Plaintiff has attempted to reintroduce his negligence claim via the FTCA in his Second Amended Complaint, after his administrative tort claim was denied on or around April 28, 2005. Document # 46, Declaration of Douglas S. Goldring at ¶ 5 and Attachment C.

The plain language of 28 U.S.C. § 2675(a) clearly provides that the administrative remedy process must be finally decided **prior** to the commencement of an action in federal court pursuant to the FTCA. See 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 111 (1993) ("the command that an 'action shall not be instituted ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally decided by the agency in writing' ... is unambiguous. We are not free to rewrite the statutory text."). See also Sparrow v. United States Postal Service, 825 F.Supp. 252, 255 (9th Cir. 1993)("Because § 2675(a) of the FTCA requires that an administrative claim be finalized at the time the complaint is filed, plaintiff's complaint cannot be cured through amendment, but instead, plaintiff must file a new suit").

In this case, Plaintiff filed the instant action well before he filed his administrative tort claim. He cannot cure this procedural defect through amendment of the complaint in this case.

---

3 As previously indicated, Plaintiff's negligence claim against the individual Defendants was ultimately dismissed from this case by District Judge McLaughlin's Order. Document # 29.

Instead, a new suit must have been filed with regard to the matters raised in his tort claim within six months after the claim was denied administratively, which time period has since passed. Thus, Plaintiff's FTCA claim against the United States should be dismissed for lack of subject matter jurisdiction.[4]

_____

_____

_____E.    The *Bivens* Claims

1.    **Eighth Amendment Claim**

As in his original Complaint, Plaintiff asserts in his Second Amended Complaint that Defendants were deliberately indifferent to his safety by forcing him to be exposed to hazardous working conditions in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  In particular, Plaintiff claims that Defendants required him to work in and around areas where Micore fiber boards were being cut, sanded, and routered, and otherwise handled by himself and other inmates without proper ventilation and protective gear.  As a result, Plaintiff claims that he was exposed to potential carcinogens contained in the dust from these fiber boards, which was further exacerbated by the required blowing and sweeping of the dust from machinery within the UNICOR facility.  In addition, Plaintiff claims that he was exposed to harmful fumes from Locweld 860/861 without proper ventilation or protective gear, and that the presence and use of the contact adhesive constituted a fire hazard.

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show: (i) "he has suffered an objectively, sufficiently serious injury," and (ii) "that prison officials inflicted the injury with deliberate indifference."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  The first prong of the Farmer test is an objective one.  Plaintiff must demonstrate that he has been incarcerated under conditions posing a substantial risk of serious harm. 511 U.S. at 834.  In this context, the Eighth Amendment protects against prison conditions that

_____

4  Since this Court is recommending dismissal of Plaintiff's FTCA claim for lack of subject matter jurisdiction, there is no need to address Defendants' argument that the FTCA claim is barred by the Prison Industries Fund, 18 U.S.C. § 4126(c)(4).

threaten to cause health problems in the future, not just conditions that cause immediate medical problems. <u>Helling v. McKinney</u>, 509 U.S. 25, 33-34 (1993)(holding that prisoner stated cause of action under Eighth Amendment by alleging that prison officials had, with deliberate indifference, exposed him to levels of environmental tobacco smoke that posed an unreasonable risk of serious damage to his future health).  <u>See</u> <u>also</u> <u>Hutto v. Finney</u>, 437 U.S. 678, 682 (1978) (Where inmates were crowded into cells with other inmates having infectious hepatitis and venereal disease, the court held that the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all those exposed).

   The second prong of the <u>Farmer</u> test is a subjective one, requiring Plaintiff to demonstrate that Defendants acted with deliberate indifference.  To establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference.  <u>Farmer,</u> 511 U.S. at 837.

   In response to Plaintiff's Second Amended Complaint, Defendants have moved to dismiss Plaintiff's Eighth Amendment claim based on essentially the same arguments and evidence that were previously found by this Court to be insufficient for the entry of summary judgment. Document # 27, Report and Recommendation.  In particular, Defendants place a great deal of reliance on test results obtained from Microbac Laboratories, Inc. ("Microbac") in 2001 and OSHA inspectors in August 2003 to support their argument that Plaintiff cannot demonstrate that he was subjected to "unreasonably high" levels of air pollutants in the UNICOR factory and, thus, cannot establish the objective component of the <u>Farmer</u> test.  As this Court previously found, however, these test results are not dispositive and do nothing more than raise a genuine issue of material fact that cannot be decided on summary judgment.

   Specifically, Plaintiff worked in the UNICOR factory beginning in April of 2002.  The Microbac testing was performed on July 31, 2001, more than eight months prior to the date Plaintiff began working at the facility. Document # 46, Attachment C to Declaration of Stephen

10

Housler.  Consequently, the results of such testing cannot be held to conclusively establish the presence or absence of harmful airborne substances during the time Plaintiff worked in the UNICOR facility.

The OSHA inspection was conducted between April 16, 2003, and August 2003 with the air sampling being conducted by OSHA on June 17 and 18, 2003. Document # 46, Attachment F to Declaration of Stephen Housler.  The results of the OSHA inspection and air testing cannot be held to conclusively reflect the air quality within the UNICOR facility during the entire period of time Plaintiff was working in the factory.  In fact, the final letter report issued on August 20, 2003, by OSHA's Area Director, John H. Stranahan, acknowledged that its test results established only that "no exposure limit was exceeded on the day of sampling." Document # 46, Attachment E to Declaration of Stephen Housler.  The report went on to recommend that a number of steps be taken "to eliminate or further reduce your employees' exposure to the hazards described above."  These hazards were identified during the inspection and were disclosed earlier in the letter report as follows:

> [p]ersonnel were potentially exposed to mechanical irritation of the skin and respiratory tract from the chemical components of micoreboard. These chemical components included but were not limited to man-made vitreous fiber and perlite.... Both the man-made vitreous fiber and the perlite are forms of glass like materials.  Specifically, perlite is a form of volcanic glass.  The glass like nature of these chemical ingredients make them very irritating to the skin, lungs, throat, nose, sinuses, and eyes.

Id.

Some of the recommendations listed in the August 20, 2003, letter report were: (i) "[e]liminate all blowing and sweeping of the micoreboard dust;" (ii) "[p]ersonnel should be provided long sleeved work coveralls that can be closed at the neck and wrist to minimize skin contact;" (iii) "[e]quip personnel with an approved NIOSH respirator.... [p]ersonnel must be trained in the proper use of the respirator;" and (iv) "[t]rain personnel on the information contained in the micoreboard's MSDS."  Id.  Each of these recommendations, raise a genuine issue of material fact as to whether the absence of such procedures prior to OSHA's inspection caused Plaintiff to be exposed to unreasonably high levels of harmful substances without appropriate protective gear and/or instruction during the time he worked in the UNICOR

11

factory.

Moreover, Plaintiff previously submitted affidavits to this Court that, at least, raise questions as to the reliability of OSHA's air quality tests. Document # 24, Plaintiff's Opposition Brief, Affidavits of William Freeman, Kevin Siggers, Michael Hill, Kevin Hill, Carlos Hicks and Leslie Kelly. In particular, the affidavit of Kevin Siggers, dated June 24, 2003, states that, on June 17, 2003, during the time OSHA was conducting its air sample tests, he and another inmate were instructed to cut only one sheet of Micore Board at a time, which significantly reduced the amount of dust that was customarily produced during a normal work day. Thus, the results of the OSHA inspection do not constitute "conclusive evidence establishing that the UNICOR factory certainly did not expose Plaintiff to" unreasonably high levels of air contaminants, as Defendants contend.

The only additional evidence Defendants have offered that differs from their previous summary judgment motion is a more detailed description of the dust collection system attached to the UNICOR machinery. See Document # 46, Declarations of Martin Sapko and Stephen Housler. This evidence is presented in an effort to prove that NIOSH-approved respirators were not required to be worn by employees in the UNICOR factory. In particular, Defendants cite the Micore Board warning label, which contains the warning: "[d]o not cut with power equipment unless a dust collector is used on the equipment **or** a local exhaust is used and a NIOSH/MSHA-approved respirator is worn." Document # 46, Declaration of Stephen Housler at ¶ 38 and Attachment J. According to Defendants, since a dust collection system was in place, no local exhaust or respirator was required.

Even if the foregoing premise is accepted as true, however, it fails to address Plaintiff's claim that he was also exposed to airborne silica dust from the blowing and sweeping of the machinery in the UNICOR factory. The OSHA report further reflects that airborne silica dust was created by scrap pieces of Micore board being thrown into a dumpster within the facility. Id. Thus, according to Plaintiff's allegations and the OSHA report itself, Plaintiff was exposed to potentially harmful silica dust within the UNICOR factory from various factors beyond the use of power equipment to cut the Micore board. Despite this fact, Plaintiff claims that

Defendants provided him with the dust mask that "did not protect against silica, toxic or hazardous air contaminants." Document # 44, at ¶ 24. In this regard, FCI-McKean's Institution Supplement regarding the use of respiratory protection in UNICOR operations expressly states that the disposable dust mask that was provided to Plaintiff: (i) is "not to be used as a respirator;" (ii) is only to be used "in low level dust situations," such as hand sanding operations, lawn mowing and floor sweeping; and (iii) "should never be used in operations or circumstances where harmful levels of dust or vapors may exist." Moreover, the packaging for the dust mask specifically states that it is "not suitable for use against toxic or hazardous air contaminants, such as, but not limited to, paint spray mists, asbestos, **silica**, cotton or other toxic dusts, fumes, gases and vapors." Document # 24, Exhibit D.

Based on the foregoing, this Court concludes that Plaintiff has sufficiently set forth a claim that he has "suffered an objectively, sufficiently serious injury" to satisfy the first prong of the <u>Farmer</u> test.

With regard to the subjective prong of the <u>Farmer</u> test, Defendants have failed to provide any new evidence that would persuade this Court to change its prior determination that Defendants knew or should have known of the potential risks associated with exposure to silica dust, and that they were put on notice of the recommended procedures and protective gear to be provided to inmates working with mineral fiber boards. Defendants argument that their "compliance with OSHA standards clearly insulates them from liability" is limited by the distant relation between the dates on which such test results were obtained and the period of time Plaintiff worked in the UNICOR factory. Moreover, Defendants' argument that the protective equipment they provided to UNICOR employees complied with the relevant MSDS sheets, which, according to Defendants, did not require the use of a NIOSH-approved respirator, fails to address the issue of whether they acted with deliberate indifference in providing UNICOR factory employees with dust masks that were not suitable for protection from silica and other toxic dusts, fumes, gases and vapors.

In light of the foregoing, there remain genuine issues of material fact that preclude summary disposition of Plaintiff's Eighth Amendment claim. Accordingly, Defendants' motion

13

to dismiss and/or for the entry of summary judgment with regard to Plaintiff's Eighth Amendment claim should be denied.

        **2.**      **Defendants Lamanna and Watson**

      Defendants argue that Defendants Lamanna and Watson should be dismissed from this action because Plaintiff has not alleged their personal involvement.

      When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 11958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

      Here, Plaintiff has alleged that "the individual defendants were employees and policymakers at FCI-McKean" and that they, "individually and in conjunction with one another, set policy with respect to working conditions at the UNICOR facility." Document # 44, at ¶ 32. Plaintiff alleges further that, "[a]s a direct result of the individual defendants' actions and the safety and work policies they established, plaintiff has been exposed to hazardous materials and dangerous working conditions that have resulted in serious health problems and conditions..."

Document # 44, at ¶ 35. Additionally, as discussed in the first Report and Recommendation, Plaintiff Ward specifically alleges that he personally discussed these health concerns with Defendant Lamanna on more than one occasion.   These allegations sufficiently implicate Defendant Lamanna in the alleged misconduct.  As a result, Defendants' motion to dismiss Defendant Lamanna from this action should be denied.

Plaintiff's Second Amended Complaint does not reassert the retaliation claim against Defendant Watson and does not assert any other claim against him.  Therefore, the motion to dismiss should be granted as to Defendant Watson.


### 3.    Qualified Immunity

Next, Defendants claim that they are entitled to qualified immunity.  The doctrine of qualified immunity insulates government officials from liability for damages insofar as their conduct does not violate clearly established rights.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  An officer performing his discretionary functions is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Curley v. Klem</u>, 278 F.3d 271, 277 (3d Cir. 2002).  "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."  <u>Hope v. Pelzer</u>, 530 U.S. 730, 739 (2002).

_____  The Supreme Court has repeatedly emphasized the importance of resolving the immunity questions at the earliest possible stages of a case.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 646 n.6 (1987); <u>Harlow</u>, 457 U.S. at 818.  However, "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right."  <u>Curley</u>, 298 F.3d at 277.

The analytical framework that district courts should employ in determining whether qualified immunity applies is clearly established:

The Court explained that a qualified immunity analysis must begin with this

15

threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right? <u>Saucier,</u> 121 S.Ct at 2156. If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established. <u>See id.</u> In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. <u>Id.</u> This inquiry, the Court noted, must be undertaken in light of the specific context of the case, not as a broad general proposition. <u>Id.</u> If a court concludes that an officer's conduct did violate a clearly established constitutional right, then it must deny him the protection afforded by qualified immunity. <u>See id.</u> at 2156-57.

<u>Curley,</u> 278 F.3d at 277. <u>See also</u> <u>Hope,</u> 530 U.S. 730; <u>Doe v. Delie,</u> 257 F.3d 309 (3d Cir. 2001).

This Court has already addressed the threshold question in this Report and Recommendation, finding that, for the purposes of this motion, Plaintiff has sufficiently alleged that his Eighth Amendment rights have been violated. The next step in the analysis is to determine whether the constitutional rights were clearly established at the time of the violation. <u>Hope,</u> 530 U.S. at 739. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier v. Katz,</u> 533 U.S. 194, 202 (2001). The Supreme Court has observed:

> for a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the length of pre-existing law the unlawfulness must be apparent.

<u>Hope,</u> 530 U.S. at 739.

In this case, the legal precedent regarding the Eighth Amendment's protections was clearly established at the time of the alleged occurrence. <u>See</u> <u>Farmer v. Brennan,</u> 511 U.S. 825 (1994) (holding that under Eighth Amendment, prison officials are required to provide humane conditions of confinement, and must take reasonable measures to guarantee safety of inmates) and <u>Helling v. McKinney,</u> 509 U.S. 25 (1993)(holding that prisoner stated cause of action under Eighth Amendment by alleging that prison officials had, with deliberate indifference, exposed him to levels of environmental tobacco smoke that posed an unreasonable risk of serious

damage to his future health). Thus, a reasonable government officer would be on notice that the conduct alleged here was unlawful.

Accordingly, Defendants are not entitled to qualified immunity and the motion to dismiss or for summary judgment should be denied in this regard.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

1)    Defendants' motion to dismiss, or in the alternative, for summary judgment [Document # 45] be granted in part and denied in part, as follows:

    a)    Plaintiff's FTCA claim against the United States should be dismissed for lack of subject matter jurisdiction based on Plaintiff's failure to exhaust his administrative remedies;

    b)    Defendants' motion to dismiss and/or for summary judgment regarding Plaintiff's Eighth Amendment claim against the individual Defendants should be denied, and such claim should be allowed to proceed.

    c)    Defendant Watson should be dismissed from this action.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                          S/ Susan Paradise Baxter
                                          SUSAN PARADISE BAXTER
                                          Chief U.S. Magistrate Judge

Dated:  July 24, 2006