IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYRON WARD,<br><br>                Plaintiff,<br><br>v.<br><br>JOHN LAMANNA, ET AL.,<br><br>                Defendants. | Civil Action No. 04-11E<br><br>Judge McLaughlin<br>Magistrate Judge Baxter<br><br>*(Electronic Filing)* |

**DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION**

AND NOW, come the Defendants, John LaManna, Marty Sapko, Deborah Forsyth, Stephen Housler, and Ned Watson (hereinafter collectively referred to as "Defendants"), by and through their attorneys, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, Christy Criswell Wiegand, Assistant United States Attorney for said district, and Douglas S. Goldring, Assistant General Counsel for Federal Prison Industries, Inc, and respectfully file their Objections to Magistrate Baxter's Report and Recommendation dated July 24, 2006 ("R&R"). In further support of said Objections, Defendants aver as follows:

**I.**     **Argument**

    **A.**     **Plaintiff's Allegations Regarding Conditions in the UNICOR Factory Cannot Establish an Eighth Amendment Violation**

Defendants respectfully object to the portion of the R&R concluding that Defendants' Motion for Summary Judgment regarding Plaintiff's Eighth Amendment Claim should be denied. The Court, applying the Supreme Court's decisions in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994) and <u>Helling v. McKinney</u>, 509 U.S. 25, 33-34 (1993), concluded that Plaintiff had satisfied both the objective and subjective prongs of the Eighth Amendment test. <u>See</u> R&R at pp. 9-14. To the

contrary, Defendants respectfully assert that Plaintiff has failed to establish either prong of the test, and the Court must dismiss his Eighth Amendment claim.

### 1. The Eighth Amendment Standard

In Helling v. McKinney, 509 U.S. 25 (1993), the Supreme Court held that a cause of action exists under the Eighth Amendment when a prisoner alleges that prison officials have exposed him, with deliberate indifference, to levels of environmental tobacco smoke ("ETS") that pose an unreasonable risk of harm to his future health. Id. at 35. In Helling, the Court established a two-part test that a plaintiff must satisfy to state a valid claim under the Eighth Amendment. The first prong is objective. The Plaintiff must show that "he himself is being exposed to unreasonably high levels of ETS." Id. at 35 (emphasis added). With respect to this prong, the Eighth Amendment requires a court not only to make a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to the contaminant, but also "to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id. at 36 (emphasis in original).

The second prong is a subjective one: a plaintiff must show that prison officials were deliberately indifferent to a serious risk of harm. Id. The Supreme Court has held that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts for which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994).

In this case, Plaintiff alleges that he was exposed to Micore Board fibers and Lokweld adhesive without appropriate ventilation and/or protective gear. However, the evidence presented by Plaintiff with respect to this claim fails to establish either prong of the Helling test, because Plaintiff cannot show that he was exposed to "unreasonably high" levels of air pollution or toxins, nor that Defendants exhibited deliberate indifference to such exposure.

### 2. Plaintiff Cannot Establish that he was Actually Exposed to "Unreasonably High Levels" of Hazardous Substances

With respect to the first prong of the Eighth Amendment analysis, Plaintiff cannot show that he was exposed to levels of air pollution or toxins in the UNICOR factory that were so unreasonably high as to violate contemporary standards of decency. Although Defendants agree that crystalline silica, an ingredient in Micore Boards, is classified as a human carcinogen, respirable silica was not detected by Occupational Safety and Health Administration ("OSHA") inspectors in the areas of the UNICOR factory where silica was present in its greatest concentrations. See Declaration of Stephen Housler ¶¶ 12-13 and 18, Attachments C and E, attached to Defendants' Brief in Support of Motion to Dismiss. Indeed, with respect to all of the chemical components of Micore Board, the OSHA inspectors determined that no UNICOR worker's exposure exceeded 10% of the relevant exposure limit. See Declaration of Stephen Housler ¶ 18, Attachment E. Thus, OSHA determined that Plaintiff and other workers were not exposed to inappropriate levels of contaminants in the UNICOR factory. Plaintiff simply cannot, in this case, "show that he himself is being exposed to unreasonably high levels of" harmful substances, as required by Helling, where the UNICOR facility is in compliance with the relevant federal air quality standards. In its R&R, the Court relies upon the "distant relation between the

dates on which such test results were obtained and the period of time Plaintiff worked in the factory," to determine that the test results did not indicate the quality of the air in the factory during the relevant period of time. See R&R, page 13. This conclusion is simply not reasonable. The air quality was tested in 2001, and again in 2003. On both occasions, the levels of harmful substances in the air were well below OSHA's allowable threshold. Furthermore, during the relevant period of time between the two tests, there is no evidence that Defendants significantly altered any of the practices, procedures or operations of the factory. As such, the only permissible conclusion, based upon the fact that air quality levels were well within the allowable limit both before and during the relevant period of time, is that the air quality would have been within allowable levels at all times between the two tests. Defendants' evidence, therefore, clearly establishes that Plaintiff was exposed only to air that comported with federal guidelines, and that any American might be exposed to on a daily basis in the course of his or her job.

Based upon the tests and inspections conducted by the OSHA inspectors, the conditions in the UNICOR factory did not require the Defendants to take any other precautions with respect to the use and processing of Micore Board. Declaration of Stephen Housler ¶¶ 18 and 32-34, and Attachments C, E and I. Id. Although several suggestions were made to increase the safety measures available to personnel assigned to the UNICOR factory, these were **recommendations** only, and OSHA fully recognized that levels of contaminants in the UNICOR factory were well within the applicable guidelines. Id.

Because the respiratory exposure level for dangerous contaminants amounted to a mere 10% of the relevant exposure limit, and BOP did not violate requirements regarding safety precautions, the risk to Plaintiff simply cannot amount to a level so grave that it violates

contemporary standards of decency as required under the <u>Helling</u> test. OSHA standards reflect contemporary standards of decency – our society willingly exposes free citizens and inmates alike to toxins, chemicals, and particulates up to the threshold values established by OSHA. <u>See, e.g.</u>, <u>Wooten v. Goord</u>, 2004 WL 816919 (W.D.N.Y), aff'd 123 Fed. Appx. 441 (2d. Cir. 2005); <u>Saahir v. Holligan</u>, 2004 WL 1418790 (N.D. Tex., June 24, 2004). The conditions present in the UNICOR building did not violate OSHA standards. As such, Plaintiff cannot, and has not, established the objective prong of the Eighth Amendment test, and his Eighth Amendment claim must be dismissed.

Numerous cases support the proposition that an inmate's Eighth Amendment claim based on exposure to hazardous substances or poor air quality cannot survive summary judgment where the correctional facility is in substantial, even if imperfect, compliance with the relevant state and/or federal standards.

The United States District Court for the Western District of New York recently addressed a § 1983 claim by pro se prisoners that New York state correctional officials had violated their Eighth Amendment rights by exposing them to inadequate ventilation and poor air quality at their inmate work assignments. <u>See</u> <u>Wooten v. Goord</u>, 2004 WL 816919 (W.D.N.Y), aff'd 123 Fed. Appx. 441 (2d. Cir. 2005). The inmates, who worked in a print shop, alleged that the ventilation system and air quality in the shop were inadequate, causing them headaches, nausea, skin irritation, increased blood pressure, and sinus problems. <u>See</u> <u>id.</u> at *1. In support of their claims, plaintiffs submitted a report by an OSHA specialist that he had concerns regarding the ability of the ventilation system to remove toxic chemicals from the breathing zones of the workers in order to create a safe working environment. <u>See</u> <u>id.</u> The OSHA specialist had not taken air

quality samples. An industrial hygienist associated with the state department of corrections later conducted air quality tests to determine whether employees were being exposed to hazardous chemicals at levels that exceeded state guidelines. Id. at *2. The air quality tests confirmed that the substances tested were below the permissible levels set by the state. Id. Based on the air quality tests, the correctional officials determined that the air quality in the print shop did not pose an unreasonable risk to inmate employees' health. Id.

The Wooten Court agreed with correctional officials' decision and granted summary judgment in their favor. The Court concluded that plaintiffs had not shown that the allegedly poor ventilation in the print shop was serious enough to satisfy the objective element of their Eighth Amendment claim. Id. at *5. The Court acknowledged that plaintiffs' evidence had shown that OSHA had made recommendations for improvements to the print shop air quality. Id. However, plaintiffs' evidence did not show that the air quality failed to comply with federal workplace safety standards. Id. Moreover, defendants' evidence regarding air quality indicated that print shop workers were not being "excessively exposed to hazardous materials." Id. Finally, plaintiffs had not offered evidence to show that defendants' air quality tests were erroneous or unreliable. Id. Accordingly, plaintiffs failed to raise a triable issue of fact with respect to the objective element of their Eighth Amendment claim. See also Saahir v. Holligan, 2004 WL 1418790 (N.D. Tex., June 24, 2004)(granting summary judgment to state prison officials in § 1983 Eighth Amendment claim by asthmatic inmate who alleged his work assignment in boot factory exposed him to hazardous chemicals, dust, and glue fumes. Defendants were entitled to summary judgment based on fact that boot factory had been inspected and air quality met OSHA standards).

Similarly, the United States District Court for the District of Delaware granted summary judgment in favor of state correctional officials on an inmate's claim that he was exposed to unreasonably high levels of environmental tobacco smoke ("ETS"), in violation of his Eighth Amendment rights. See Baker v. Williams, 2002 WL 31015630 (D.Del., Sept. 10, 2002). In Baker, the inmate provided an affidavit that he was exposed to "cloudy," "very smoky" conditions, as well as a chart detailing the time of day and the number of inmates smoking at any given time over the course of a five-day period. Id. He also produced affidavits from several other inmates in support of his claims. Id. The Baker Court granted summary judgment in favor of defendant prison officials because, even if plaintiff had shown that he was subject to some level environmental tobacco smoke, he had not "provid[ed] competent evidence as to the level of such ETS." Id. Accordingly, the Court found that the inmate failed to meet the Supreme Court's requirement in Helling that he show his exposure to a toxin "created a risk [that] is so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id. (quoting Helling, 509 U.S. at 36). See also Jones v. Kearney, 2001 WL 1414854 (D.Del., Nov. 2, 2001)(granting defendant correctional officials' 12(b)(6) motion on inmate's Eighth Amendment claim where plaintiff inmate could not show that he himself was being exposed to "unreasonably high levels" of environmental tobacco smoke, because institution had an "open air only" smoking policy). Here, like the inmate in Baker, Plaintiff Ward cannot show that he was exposed to a level of air pollution, dust, or toxins that created a risk so grave as to violate contemporary standards of decency. To the contrary, Defendants have come forward with conclusive evidence establishing that the UNICOR factory certainly did not expose Plaintiff to that kind of risk.

Courts have granted summary judgment in favor of prison officials even where the correctional facility is <u>not</u> in compliance with applicable federal standards. In <u>Carroll v. Ditella</u>, 255 F.3d 470 (7th Cir. 2001), the United States Court of Appeals for the Seventh Circuit granted summary judgment in favor of Illinois correctional officials on plaintiff's Eighth Amendment claim that the prison drinking water was contaminated with radium. There, it was undisputed that the radium levels in the drinking water of the correctional facility <u>did</u> exceed the maximum level set by the United States Environmental Protection Agency ("EPA"). <u>See id.</u> at 472. However, despite the fact that the correctional facility's radium level continued to exceed the federal maximum, the state environmental agency informed the plaintiff-inmate that other communities in Illinois had water supplies that also exceeded the federal maximum. Plaintiff was also informed that no remedial action would be taken to address radium levels, because the EPA was considering raising the maximum level. However, at the time plaintiff filed suit, the EPA had not raised the radium standard, and the plaintiff continued to be subject to radium levels that violated the applicable federal standards. Nonetheless, the Seventh Circuit granted summary judgment in favor of prison officials.

In granting summary judgment, the <u>Carroll</u> Court recognized that prisons are not under a duty to provide a maximally safe environment, completely free from pollution or safety hazards. <u>Id.</u> Moreover, because many Americans live under conditions of exposure to various contaminants, the Court acknowledged that the Eighth Amendment does not require prisons to provide prisoners with "more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." <u>Id.</u> (internal citations omitted). As the Court recognized,

> It would be inconsistent with this principle to impose upon prisons in the name of the Constitution a duty to take remedial measures against pollution or other contamination that the agencies responsible for the control of these hazards do not think require remedial measures. If the environmental authorities think there's no reason to do anything about a contaminant because its concentration is less than half the maximum in a proposed revision of the existing standards, prison officials cannot be faulted for not thinking it necessary for them to do anything either. They can defer to the superior expertise of those authorities.

Id. at 472-73.

Here, Plaintiff Ward is being exposed to air quality and working conditions that OSHA, and our society, deems to be entirely acceptable for all persons, whether free or incarcerated. Accordingly, Plaintiff simply cannot show that he was subjected to "unreasonably high" levels of air pollutants, he has failed the objective portion of the Helling Eighth Amendment test, and summary judgment must be entered in favor of Defendants.

### 3. Plaintiff Cannot Establish Deliberate Indifference on the Part of Prison Officials

Even assuming that Plaintiff had satisfied the objective portion of the Eighth Amendment test, which he has not, he cannot show deliberate indifference on the part of prison officials, as required by the subjective portion of the Helling test. Defendants respectfully disagree with the Court's conclusion that compliance with OSHA standards does not insulate Defendants from liability. See R&R, at p. 13. Furthermore, even assuming, arguendo, that Defendants' compliance with OSHA standards is not enough, Defendants respectfully assert that they did evaluate, and comply with, the Material Safety Data Sheets for substances utilized in the UNICOR factory.

Courts have established that, with respect to the subjective prong of the Eighth Amendment analysis, Defendants are not deliberately indifferent to plaintiffs' health where they

9

conduct air quality testing and results comply with federal standards. In Carroll, the Seventh Circuit stated that even if inmate print shop employees had met the objective portion of their burden, they could not satisfy the subjective element despite the fact that defendants were on notice that the ventilation system may have needed improvements. See 2004 WL 816919, at *5. "Any claim that defendants were aware that the conditions in the Print Shop posed an excessive risk to plaintiffs' health is belied by the subsequent inspections of the Print Shop, which revealed that the air quality was acceptable according to federal standards." Id. at *5.

     Here, as in Carroll, OSHA conducted air quality test results and concluded that the air quality in the UNICOR factory was well within applicable acceptable guidelines for the relevant contaminants. It was thus reasonable for FCI McKean to rely on available air quality test results to determine what, if any, safety equipment it needed to make available for staff and inmates assigned to the UNICOR factory. There is no genuine issue of fact as to whether Defendants were both aware of, and disregarded, an excessive and serious risk to Plaintiff Ward's health. The Court may not hold Defendants to a higher standard than that required by federal agencies who are charged with monitoring workplace safety. Therefore, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim, and it must be dismissed from this civil action.

     Moreover, even if compliance with OSHA standards was not sufficient to insulate Defendants from being deemed deliberately indifferent, Defendants also relied on, and acted consistently with, the applicable MSDS sheets and product warning labels in determining what protective equipment to provide for UNICOR employees. MSDS sheets are required to, and do, list risks associated with overexposure to various chemicals. More importantly, however, the

MSDS sheets set forth what precautions, if any, must be taken in order to protect against such risks. Defendants' decisions regarding the UNICOR work environment and protective equipment were consistent with the MSDS sheets and with product warning labels.

The product warning label for Micore Board states: "Dust hazard. Cut and trim with knife, razor, or hand saw. Do not cut with power equipment unless a dust collector is used on the equipment or local exhaust is used and a NIOSH/MSHA-approved respirator is worn." See Declaration of Stephen Housler ¶ 38, and Attachment J. Defendants do not dispute that power equipment was used to cut Micore Board. However, in accordance with the Micore 300 label, the UNICOR factory employed a dust collector on the cutting equipment. See Declaration of Stephen Housler ¶ 36; Declaration of Martin Sapko ¶¶ 7-10, and Attachments C-E. Because the UNICOR factory used a dust-collector system instead of local exhaust, a NIOSH/MSHA-approved mask was not required. See Declaration of Stephen Housler ¶¶ 34-38, and Attachments I-J.

The MSDS for Micore Board is also instructive in establishing that NIOSH/MSHA-approved masks are not required when a dust collecting system is in use.[1] See Declaration of Stephen Housler  ¶¶ 32-35, and Attachment C, E, and I. An MSDS is a technical bulletin prepared by chemical manufacturers and importers to supplement the information contained on product labels. 29 C.F.R. § 1910.1200, App. E. Pursuant to OSHA regulations, employers may

---

[1] Pursuant to the Hazard Communication Standard ("HCS") promulgated by OSHA, chemical manufacturers and importers must evaluate the hazards of chemicals they produce or import. Using that information, they must prepare labels for containers, and the more detailed MSDS technical bulletins. Chemical manufacturers, importers and distributors of hazardous chemicals are required to provide the appropriate labels and MSDS to the employer to which they ship the chemicals. 29 C.F.R. §1910.1200, App. E. See Declaration of Stephen Housler ¶ 33.

rely on the information contained on the product labels, as supplemented by the MSDS, and have no independent duty to analyze the chemical or evaluate the hazards of it. See Declaration of Stephen Housler ¶ 33.

Section VII of the MSDS for Micore Board provides:

> **Respiratory protection:** Not typically necessary under normal conditions of use. Provide general ventilation and local exhaust ventilation to meet TLV [(Threshold Limit Values)] requirements of individual ingredients and to control dusting conditions. Wear a NIOSH/MSHA-approved dust respirator in poorly ventilated areas, if TLV is exceeded, and/or when dusty conditions exist. Avoid prolonged and repeated breathing of dust.

See Declaration of Stephen Housler ¶ 32, and Attachment I.

Thus, according to the MSDS for Micore Board, there are three situations which would necessitate the use of respirators when working with Micore Board: (1) in poorly ventilated areas; (2) if Threshold Limit Values are exceeded; or (3) when dusty conditions exist. See Declaration of Stephen Housler ¶ 35, and Attachment I. However, the air quality tests performed by OSHA in the UNICOR factory definitively establish that the UNICOR factory was not poorly-ventilated, that the Threshold Limit Values for hazardous ingredients of Micore Board were not exceeded, and that dusty conditions did not exist. See Declaration of Stephen Housler ¶¶ 12-13, 18, and Attachments C and E. Indeed, the evidence shows that air quality tests conducted in 2001 and 2003, by Microbac Laboratories and by OSHA, respectively, revealed that the respiratory particulates were well below applicable OSHA limits. See Declaration of Stephen Housler ¶¶ 12-13, 18, and Attachments C and E. More specifically, with respect to the level of dust in the UNICOR factory, the objective air quality tests show that the total particulate level was 1.1 mg per cubic meter, which is well below the applicable TLV standard for total Particulates/Nuisance Dust – 15 mg per cubic meter. See Declaration of Stephen Housler ¶¶ 12-13, 18, and

Attachments C and E.

The "Special Precautions" section of the Micore Board MSDS provides further support for the determination that a respirator was not necessary. That section indicates that "[o]ver-exposure to dust can cause eye, skin, nose, throat or respiratory irritation... Do not cut with power equipment unless either a dust collector is used on the equipment or local exhaust is used and NIOSH/MSHA-approved respirator is worn." See Declaration of Stephen Housler ¶¶ 32-37, and Attachment I. This language is similar, but not the same as, the warning contained on the Micore Board product label. The use and placement of the words either and or in the MSDS indicates that at times when the Micore Board is cut with power equipment, the factory could implement one of two precautions: either use a dust collector system, or use local exhaust and NIOSH/MSHA-approved respirators. Defendants reasonably opted to employ a dust collector system. See Declaration of Stephen Housler ¶ 38, and Attachment J; Declaration of Martin Sapko ¶¶ 7-10, and Attachments C-E. The MSDS does not indicate that, where a dust collector is used on the equipment, NIOSH-approved respirators are also required. See Declaration of Stephen Housler ¶¶ 32-37, and Attachment I. Defendants' interpretation of the applicable safety requirements for Micore Board is consistent with the findings of the OSHA inspectors, who recommended, but did not require, the use of NIOSH-approved respirators. See Declaration of Stephen Housler ¶ 18, and Attachment E.

With respect to Plaintiff's claims regarding exposure to Lokweld, a spray-grade adhesive that is used in the UNICOR factory, the MSDS for Lokweld expressly states that a respirator is only required "in case of insufficient ventilation." See Declaration of Stephen Housler, Attachment G. Lokweld is applied to materials in the UNICOR factory using a sprayer, which is

13

located in an enclosed spraying booth with an independent exhaust system.  See Declaration of Stephen Housler ¶ 21.  The booth in which Lokweld is used is completely enclosed, and no leaks or other hazards have been identified relating to Lokweld.  See Declaration of Stephen Housler ¶ 22.  Had a leak developed, vapors emanating from the booth would have had a noxious and easily identifiable odor.  See Declaration of Stephen Housler ¶ 22.  FCI McKean has not received any complaints about odors in or around the Lokweld station, nor has the Safety Manager ever noticed any unusual odors in the area.  See Declaration of Stephen Housler ¶ 22.

Moreover, when OSHA inspected the UNICOR factory between April and August of 2003, they fully inspected the Lokweld spray booth.  See Declaration of Stephen Housler ¶ 23.  The OSHA inspectors did not reveal any concerns relating to any Lokweld fumes emanating from the spray booth.  See Declaration of Stephen Housler ¶¶ 24-25, and Attachment F.  The only concerns the OSHA inspectors had regarding the use of Lokweld in the UNICOR factory related to (1) the combustibility of Lokweld when stored near certain wood products; and (2) an isolated unauthorized use of Lokweld by an inmate to glue two boards by hand in the factory.  See Declaration of Stephen Housler ¶¶ 24-27, and Attachment F.  FCI McKean corrected each of OSHA's concerns relating to Lokweld by September 22, 2003.  See Declaration of Stephen Housler ¶ 29, and Attachment H.  Accordingly, Plaintiff's concerns about Lokweld are contradicted by the results from the OSHA inspection, the MSDS sheet for Lokweld, and the Declaration of Safety Manager Housler, each of which indicates that Lokweld fumes were not emanating into the UNICOR factory, and that Plaintiff was not improperly exposed to Lokweld.

In conclusion, Defendants properly relied on objective air quality data, the results of the OSHA inspection of the UNICOR factory, and the relevant MSDS sheets in making decisions

regarding UNICOR factory conditions and necessary protective equipment. They were in no way deliberately indifferent to Plaintiff's health and safety in relying on this objective, federally sanctioned information, and Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim.[2]

### B. Plaintiff Has Provided No Evidence of Defendant LaManna's Personal Involvement in this Case.

Defendants also respectfully disagree with the Court's conclusion that Defendant LaManna had any personal involvement with this case. The Plaintiff here has not alleged any facts implicating Defendant LaManna in the alleged denial of any Constitutional right. As such, it is clear that Defendant LaManna has been named in this lawsuit solely based upon his position as the Warden and CEO of FCI McKean. Accordingly, the Plaintiff's claims against him should be dismissed for failure to show personal involvement. Bracey v. Grenoble, 494 F.2d 566 (3rd Cir. 1974); Geter v. Fortenberry, 849 F.2d 1550, 1553 (5th Cir. 1988)(complaints combining

---

[2] The Court's R&R does not address Plaintiff's allegation that Defendants violated his Eighth Amendment rights by altering the Material Safety Data Sheet (MSDS) for Micore Fiber. See Second Amended Complaint ¶ 22. Even if this allegation could satisfy Eighth Amendment standards, Plaintiff has provided no evidence that he was actually harmed by the alleged alteration to the MSDS sheet. Specifically, Plaintiff was not provided with a respirator because: a) it was determined that a respirator was not required, and b) he never requested one. See Declaration of Martin Sapko ¶ 12; Declaration of Stephen Housler ¶¶ 32-48; Declaration of Debora Forsyth ¶ 8. An unauthorized marking or alteration which was allegedly made on the MSDS sheet, and never noticed by any staff member at the time, played no part in this calculus. See Declaration of Martin Sapko ¶ 12; Declaration of Stephen Housler ¶¶ 32-48; Declaration of Debora Forsyth ¶ 8. Finally, because copies of the MSDS sheets are readily available on the factory floor, any staff or inmate in the factory could place an unauthorized marking or alteration on an MSDS sheet. Such handwritten alterations to an MSDS sheet are not authorized by Defendant Housler or anyone else in the institution. See Declaration of Martin Sapko ¶ 13; Declaration of Stephen Housler ¶¶ 43-45; Declaration of Debora Forsyth ¶ 9. Nonetheless, if an alteration to the MSDS sheet had been brought to the attention of staff, it would have been replaced as soon as practicable. See Declaration of Martin Sapko ¶ 13; Declaration of Stephen Housler ¶¶ 43-45; Declaration of Debora Forsyth ¶ 9.

conclusory allegations, absent reference to material facts, will not survive motions to dismiss); Robertson v. Sichel, 127 U.S. 507, 515-17 (1988)(the doctrine of respondeat superior cannot form the basis of a Bivens claim.); Rizzo v. Goode, 423 U.S. 362, 371 (1976)(same); Farmer v. Carlson, 685 F.Supp. 1335 (M.D. Pa 1988)(same); Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), cert. denied, 502 U.S. 1074 (1992) (Supervisory personnel are generally not liable in a civil rights action under the theory of vicarious liability).

### C.      **Defendants Are Protected from Suit by the Doctrine of Qualified Immunity**

Finally, Defendants assert that they are entitled to be protected from suit based upon the doctrine of qualified immunity. The Supreme Court has held that federal executive officials, other than those performing adjudicatory or prosecutorial functions, are entitled to qualified good faith immunity from personal liability for civil damages. Saucier v. Katz, 533 U.S. 194 (2001)[3]; Harlow v. Fitzgerald, 457 U.S. 800 (1982); Butz v. Economou, 438 U.S. 478 (1978). This is an "immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511 (1985); see also Hunter v. Bryant, 502 U.S. 224 (1991) (*per curiam*).[4]

---

[3] In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court held that the lower courts had been ignoring a significant threshold question. Specifically, this Court must consider whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 200-01. Only if a constitutional violation could be made out from the Plaintiff's allegations does the analysis move to the second sequential step, asking "whether the right in question was clearly established." Id. The Court went on to caution, however, that this second inquiry, is not taken in a broad, general context, but must be "undertaken in light of the specific context of the case." Id. The reason for such an analysis is to avoid treating prison administrators as attorneys, and holding them to an impossible standard.

[4] Government officials are not expected to be legal scholars like law professors. Ward v. San Diego County, 791 F.2d 1329, 1332 (9th Cir. 1986), cert. denied sub nom., Duffy v. Ward, 483 U.S. 1020 (1987). The contours of the right allegedly violated must be sufficiently clear so that a reasonable government official would understand that his or her conduct violated the plaintiff's constitutional rights. Officers who reasonably but mistakenly conclude their conduct

In the present case, Plaintiff has not shown that the Defendants violated his clearly established Constitutional rights. Thus, his Second Amended Complaint fails to satisfy either prong of the Saucier analysis. As such, all of the Defendants are entitled to qualified immunity.

## II.     Conclusion

WHEREFORE, for the foregoing reasons, Defendants respectfully object to the R&R and request that this Court dismiss Plaintiff's Second Amended Complaint with prejudice or, in the alternative, grant summary judgment in favor of Defendants.

Respectfully Submitted,

MARY BETH BUCHANAN
United States Attorney


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
Assistant United States Attorney
Western District of Pennsylvania
U.S. Post Office and Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7452

OF COUNSEL:

Douglas S. Goldring
Assistant General Counsel
Federal Prison Industries (UNICOR)
400 First Street, NW, 8th Floor
Washington, DC 20534

---

was lawful are entitled to immunity. Hunter, 502 U.S. at 228-29.

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2006, a copy of the within

**DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION** was

served electronically and/or by first-class United States mail, upon the following:

>Richard A. Lanzillo, Esquire
>Knox McLaughlin Gornall & Sennett, P.C.
>120 West Tenth Street
>Erie, PA 16501-1461


        /s/ Christy Criswell Wiegand
        CHRISTY CRISWELL WIEGAND
        Assistant U.S. Attorney