**Westlaw Download Summary Report for GOLDRING,DOUG 5288651**

| | |
|---|---|
| Date/Time of Request: | Wednesday, January 31, 2007 14:08:00 Central |
| Client Identifier: | DOJ |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 372 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31015630 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

C
Briefs and Other Related Documents
Baker v. WilliamsD.Del.,2002.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Anthony W. BAKER, Jr., Plaintiff,
v.
Warden Raphael WILLIAMS, Correctional Medical Services Inc, and Pamela Minor, Defendants.
No. Civ.A. 01-471-GMS.

Sept. 9, 2002.

Former state prisoner brought § 1983 action, alleging that exposure to environmental tobacco smoke had violated his Eighth and Fourteenth Amendment rights. On defendants' motions for summary judgment, the District Court, Sleet, J., held that there was no showing of level of smoke or that prison officials were deliberately indifferent to problem.

Motions granted.
West Headnotes
[1] Civil Rights 78 1319

78 Civil Rights
    78III Federal Remedies in General
        78k1314 Adequacy, Availability, and Exhaustion of State or Local Remedies
            78k1319 k. Criminal Law Enforcement; Prisons. Most Cited Cases
            (Formerly 78k209)
State prisoner's § 1983 action complaining of prison conditions would not be dismissed for failure to exhaust administrative remedies absent affirmative proof of such failure. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a).

[2] Prisons 310 17(1)

310 Prisons
    310k17 Maintenance and Care of Prisoners
        310k17(1) k. Prison Conditions in General. Most Cited Cases

**Sentencing and Punishment 350H 1536**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1536 k. Hazardous and Unhealthful Conditions. Most Cited Cases
State could not be held liable for Eighth Amendment violation under § 1983 for exposure of prisoner to environmental tobacco smoke absent showing that level of smoke was so great as to create grave risk of injury or that officials were deliberately indifferent; there was no objective evidence as to level of smoke involved, and prison had attempted to enforce smoking restrictions. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

*MEMORANDUM AND ORDER*
SLEET, J.

I. INTRODUCTION

*1 On June 25, 2001, Anthony W. Baker ("Baker"), a *pro se* prisoner, filed a complaint against Warden Raphael Williams and Pamela Minor ("the state defendants"), and Correctional Medical Services, Inc. ("CMS") pursuant to 42 U.S.C. § 1983. At the time of filing, Baker was incarcerated at Gander Hill prison in Wilmington, Delaware, and was housed in the dormitory of a drug rehabilitation unit (the "Key Program dormitory"). Baker contends that the living conditions in the Key Program dormitory exposed him to unreasonably high levels of environmental tobacco smoke ("ETS"). He further asserts that the defendants' failure to either alter these living conditions or remove him from the environment violated his Eighth and Fourteenth Amendment rights.

On January 17, 2002, the state defendants moved to dismiss the complaint. CMS entered its own motion to dismiss the complaint on February 4, 2002. Because each of the defendants and Baker have attached sworn affidavits and additional materials outside of the pleadings, the court will treat the motions as motions for summary judgment. See Fed. R. Civ. P. 12(b) For the following reasons, the court will grant the defendants' motions.

II. BACKGROUND [FN1]

FN1. Baker provides an extensive account

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2002 WL 31015630 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

of his time at Gander Hill and his various grievances. However, the court will only address those facts relating to Baker's claims.

On December 13, 2000, Baker was sentenced to complete a term in the Key Program. He was transferred to Gander Hill's Key Program dormitory on January 9, 2001. On April 10, 2001, Baker filed both institutional and medical grievances regarding conditions in the Key Program dormitory. In his grievances, he complained of nausea, headaches, dizziness, and shortness of breath due to the ETS present in the Key Program dormitory.[FN2] CMS responded that it was unable address the problem of smoking in the dormitory, since this was a security issue. Baker received a confirmation that prison officials had received his inmate grievance from prison officials.

>   FN2. Baker does not provide copies of the April 10, 2001 grievance forms, but does provide the response to his grievances. The specifics of the grievance are taken from the facts Baker alleges in his complaint.

On April 24, 2001, Baker filed an institutional grievance, complaining of high heat levels, ETS, and overcrowding. Prison officials acknowledged receipt of his grievance on April 25, 2001. On May 15, 2001, the Residential Grievance Committee ("RGC") held a hearing. After this hearing, the RGC recommended that smoking regulations be enforced, that violators be held accountable, and that such actions be properly documented. It further stated that James Deshields, the Key Program Director, was working toward a solution regarding both the smoking issue and the issue of prisoners not receiving regular outdoor yard time.[FN3] The RGC recommendation form indicates that the grievance was sent to Level II of the grievance process on May 22, 2001. The Warden's office responded by denying Baker's grievance on May 23, 2001. It noted that state law prohibited turning on the Key Program dormitory's cooling system until after May 15. The Warden's office further stated that smoking was prohibited except in designated areas. Baker appealed this decision.

>   FN3. Baker's grievance forms prior to May 26, 2001 do not appear to indicate that he was denied yard time or that he had complained of any denial. However, the RGC addressed this issue in their May 24, 2001 recommendation.

On May 8, 2001, Baker filed an emergency medical grievance. He then filed a sick call request on May 9, 2001. While none of the parties have presented records of this visit, Baker asserts that he was seen in response to his sick call request and prescribed an inhaler by CMS staff. CMS does not dispute this fact. On May 20, 2001, Baker filed an institutional grievance detailing incidents in which he witnessed inmates smoking in violation of the prison's stated no-smoking policy. Baker again requested that the no-smoking regulations be enforced. The parties provide no response to this grievance form. However, Baker does provide a copy of a grievance appeal form that he filed on May 26, 2001.

*2 On the appeal form, Baker describes similar circumstances to the May 20, 2001 grievance. He also notes that, on May 1, 2001, Lieutenant Sheets announced that smoking would no longer be permitted in the Key Program dormitory. He further indicates that in the two weeks preceding the appeal form, the residents of the Key Program dormitory received outdoor yard time on only a few occasions. Baker asserts that this lack of outdoor yard time was the basis for a relaxation of the smoking policies in the Key Program dormitory. His appeal form indicates that the matter was forwarded to the Bureau Grievance Officer ("BGO") on May 31, 2001.

On June 6, 2001, Baker filed another emergency medical grievance form. He claimed to be experiencing nausea, dizziness, and shortness of breath, due to the ETS in the Key Program dormitory's bathroom and shower area. Baker's grievance further states that inmates within the Key Program dormitory had been placed in positions of authority. According to Baker, these inmates then failed to uniformly enforce the no-smoking policy. He therefore requested that the Department of Corrections enforce the smoking policy equally, and that he be given a full physical examination to determine the effects of "long term exposure" to ETS. He also requested that CMS assist in coordinating the no-smoking policy.

On June 7, 2001, Sergeant Mary Moody ("Moody") acknowledged Baker's medical grievance. She stated that Baker's grievance duplicated a grievance that had been addressed previously. Moody further noted that Baker had a pending Level III appeal on this issue, and reiterated that the smoking policy did not permit inmates to smoke in housing units or dormitories.[FN4]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00011-SJM-SPB   Document 68-43   Filed 02/02/2007   Page 4 of 7

Not Reported in F.Supp.2d                                                                                      Page 3
Not Reported in F.Supp.2d, 2002 WL 31015630 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

She assured Baker that she would forward his complaint "to the Administration for review and whatever action deemed necessary to address your concern." (D.I. 2 at 45.) Moody suggested that Baker submit a sick call slip if he was in need of medical attention while awaiting the completion of his appeal. The court has no further information regarding Baker's appeal or his grievances. Baker was released from prison on June 27, 2002.

> FN4. Level III is the final stage of the inmate grievance process. The court will further address the grievance process in section IV A, *infra.*

### III. STANDARD OF REVIEW

The court may grant summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if, given the evidence, a reasonable jury could return a verdict in favor of the non-moving party. *See, e.g., Abraham v. Raso,* 183 F.3d 279, 287 (3d Cir.1999) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Lloyd v. Jefferson,* 53 F.Supp.2d 643, 654 (D.Del.1999) (citing same). A fact is "material" if it bears on an essential element of the plaintiff's claim. *See, e.g., Abraham,* 183 F.3d at 287; *Lloyd,* 53 F.Supp.2d at 654. On summary judgment, the court cannot weigh the evidence or make credibility determinations. *See Anderson,* 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict ."); *International Union, United Auto., Aerospace & Ag. Implement Workers of America, U.A.W. v. Skinner Engine Co.,* 188 F.3d 130, 137 (3d Cir.1999) ("At the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact finder."). Instead, the court can only determine whether there is a genuine issue for trial. *See Abraham,* 183 F.3d at 287. In doing so, the court must look at the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all reasonable doubts in favor of that party. *See, e.g., Pacitti v. Macy's,* 193 F.3d 766, 772 (3d Cir.1999). With this standard in mind, the court will now turn to the substance of the defendants' motions for summary judgment.

### IV. DISCUSSION

*3 Baker brings suit pursuant to 42 U.S.C. § 1983, claiming that the defendants violated his Eighth and Fourteenth Amendment rights. In his complaint, he seeks injunctive and monetary relief. However, because Baker has been released from Gander Hill and the Key Program dormitory, injunctive relief is neither viable nor necessary. *See Fontroy v. Owens,* 150 F.3d 239, 244, n. 6 (3d Cir.1998) (noting that an injunction would be "useless" because the plaintiff is no longer incarcerated.) Accordingly, the court will only address those claims for which Baker seeks monetary damages.

#### A. Administrative Remedies

[1] CMS asserts that Baker's claims must be dismissed because he has not exhausted his administrative remedies. Title 42 of the United States Code, § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." However, the Third Circuit recently recognized that failure to exhaust administrative remedies is an affirmative defense. *See Ray v. Kertes,* 285 F.3d 287, 295 (3d Cir.2002). Accordingly, the defendants bear the burden of proving failure to exhaust. *See id.*

Pursuant to the State of Delaware Bureau of Prisons Procedure Manual (the "Manual"), inmates must complete three procedural phases to exhaust all their administrative remedies. At Level I, an inmate files a grievance form which must be addressed by the inmate's housing unit supervisors within three days. If the grievance remains unresolved after this period, it is referred to Level II. At Level II, the RGC convenes within thirty days of its receipt of the inmate's grievance form. The RGC reviews the inmate's grievance and makes recommendations. These are referred to the Warden or Warden's Designee (the "Warden"), who is required to respond within ten days. If the Warden and the inmate concur with the RGC's recommendations, the file is closed. If there is no concurrence, the grievance is referred to Level III. At Level III, the BGO will review the inmate's grievance upon receipt. If the BGO and the Bureau Chief of Prisons concur with the Warden's decision, the matter is closed. The Bureau Chief of Prisons may review any recommendations made by

Case 1:04-cv-00011-SJM-SPB   Document 68-43   Filed 02/02/2007   Page 5 of 7

Not Reported in F.Supp.2d                                                                                              Page 4
Not Reported in F.Supp.2d, 2002 WL 31015630 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

the BGO. Decisions by the Bureau Chief of Prisons are final and not subject to review.

CMS alleges that "[t]he plaintiff never exhausted his administrative remedies ... Plaintiff admits in his Complaint that the grievances submitted was [sic] not heard or resolved at the time he filed this action." (D.I. 26 at 5.) CMS further notes that "several" procedural steps in the grievance process remained at the time Baker filed his complaint. *Id.* It provides no further analysis, or evidence, on this point.

The court has reviewed Baker's complaint and has found no written admission that he failed to exhaust his administrative remedies. The only evidence that could be construed to support CMS' assertion is Baker's appeal form dated May 26, 2001, and Sergeant Moody's June 7, 2001 response to Baker's June 6, 2001 emergency medical grievance. The May 26, 2001 appeal form notes that Baker's grievance was sent to the BGO on May 31, 2001. (D.I. 2 at 43.) Such a referral is the first step in the final level of the grievance process. Sergeant Moody's response further confirms that Baker "[had] a grievance pending Level III decision," as of June 7, 2001. (D.I. 2 at 45.) Thus, although Baker had clearly arrived at the final stage of his appeals process, it is unclear as to whether Baker's Level III grievance had been completed when he filed his complaint, nor does CMS offer any such clarification. Accordingly, because CMS has failed to meet its burden of proving failure to exhaust, and erring on the side of caution, the court will examine the merits of Baker's claims.

B. ETS

*4 [2] While he was incarcerated, Gander Hill had the duty to assume some responsibility for Baker's safety and general well-being since he was unable to care for himself.[FN5] *See Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *see also Perez v. Holman,* 2001 U.S. Dist. LEXIS 13095, *6 (D.Del. Aug. 29, 2001). Notwithstanding this mandate, however, Baker nevertheless bears the burden of proving the alleged violations. Accordingly, to prove that the defendants violated his Eighth Amendment rights by exposing him to ETS, Baker must demonstrate that (1) objective evidence shows that he was exposed to unreasonably high levels of ETS, and (2) the defendants have shown deliberate indifference to his exposure. *See Helling,* 509 U.S. at 35.

FN5. It is in this context that the court finds one of the state defendants' gratuitous observations regarding Baker's allegations particularly inappropriate and disturbing. Specifically, the state defendants suggest that [i]t's time for the plaintiff to assume responsibility for his own behavior ....[i]f the plaintiff indeed believes [his] allegations, then perhaps now that he has been once again released, he will think twice before committing an act that will result in his return to this allegedly 'harmful' environment." State Defendants' Reply Brief at 3.

1. Exposure to Unreasonably High Levels of ETS

After examining the record, the court concludes that Baker has failed to demonstrate that he was being exposed to unreasonably high levels of ETS. Baker first alleges that CMS prescribed him an inhaler during a sick call visit on May 9, 2001. However, neither party has documented this sick call visit. Thus, the court is left with Baker's bare assertion with regard to this inhaler. Even assuming that CMS did prescribe this inhaler, however, the court has no information from which to ascertain how this inhaler relates to unreasonably high levels of ETS.

Baker further offers copies of his institutional grievances and his own affidavits as evidence. In his affidavits, Baker describes the conditions inside his dormitory as "cloudy," "smoky," and "very smoky." He also provides a chart which spans five days and lists the time of day and number of inmates he apparently counted smoking at that time.[FN6] Finally, he offers affidavits from several other prisoners. In each of these affidavits, the prisoners state that, although they are not allowed to smoke inside, the prison commissary continues to sell them cigarettes. However, even assuming that this evidence is sufficient to raise an issue as to whether Baker was exposed to some amount ETS, it does not provide competent evidence as to the level of such ETS. Accordingly, Baker has failed to produce evidence sufficient to demonstrate that his alleged exposure created "a risk ... [that is] so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling,* 509 at 36.

FN6. These affidavits are dated March 30-31, 2001, April 1-2, 2001, and April 6-7, 2001. As such, each of these affidavits purports to reflect the conditions in Baker's

Not Reported in F.Supp.2d                                                                                                          Page 5
Not Reported in F.Supp.2d, 2002 WL 31015630 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

dormitory prior to his having filed any institutional grievance addressing this issue. As the prison did not adopt its no-smoking policy until May 1, 2001, the court will not place undue weight on these affidavits alone.

### 2. Deliberate Indifference

Even if Baker had met the first, objective prong, his claim must nevertheless fail. This is so because under the second, subjective prong, he must demonstrate that the defendants exhibited deliberate indifference to his needs. To be considered deliberately indifferent, the defendants must have known that Baker faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. See *Farmer v. Brennan,* 511 U.S. 825, 842-843, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In other words, the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. See *id.* at 837.

*5 Baker has provided no evidence which would demonstrate deliberate indifference. Indeed, to the contrary, Baker's own evidence and admissions reflect that the prison officials were not deliberately indifferent. In response to Baker's April 24, 2001 grievance, the RGC recommended that the no-smoking policy be enforced, that violators be held accountable, and that such actions be properly documented. It further stated that the prison was working on addressing any smoking problems which existed. Baker further admits that, on May 1, 2002, Lieutenant Sheets announced that smoking would not longer be permitted in the Key Program dormitory. On June 7, 2002, another prison official suggested that Baker file a sick call slip if he was in need of medical attention while awaiting the completion of his appeal. Finally, the prisoner affidavits that Baker submits as evidence clearly state that the prisoners understood that they were not allowed to smoke in the Key Program dormitory.

Thus, after reviewing the record, the court must conclude that Baker has adduced no evidence of deliberate indifference from either of the defendants. To the contrary, prison officials responded to his grievances, suggested he seek medical aid while waiting for the appeals process to be complete if he so required, and instituted a no-smoking policy. Accordingly, Baker has failed to meet his burden.

### C. Yard Time

Next, Baker appears to claim that he was denied access to the recreation yard while he was housed in the Key Program dormitory.[FN7] Denial of outdoor yard or exercise time may rise to the level of a constitutional violation if the denial lasted "for a prolonged period of time and the plaintiff can demonstrate a tangible physical harm which resulted from the denial of exercise." *Castro v. Chesney,* 1998 U.S. Dist. LEXIS 17278, at *31 (E.D.Pa. Nov. 3, 1998).

> FN7. It is unclear from Baker's complaint and subsequent submissions if he is actually seeking damages for a denial of yard time. However, based on his allegations, and because Baker is appearing *pro se,* the court will assume that he does intend to assert such a claim.

In his complaint, Baker alleges that he was repeatedly denied access to the prison yard for a period of over one hundred and twenty days. In support of his claim, Baker has presented the aforementioned affidavits of his fellow inmates. These affidavits state that, "[s]ince Department of Corrections announced a ban on smoking in (Dormitory # 1) on (5-1-01); [sic] I have not been permitted to participate in daily outdoor recreation ... [W]e are unable to (smoke outside); [sic] due to lack of outdoor recreation; [sic] except on rare occasions." (D.I. 2 at Exh. D.) The affiants do not indicate that Baker himself was denied yard time, let alone for a period of one hundred and twenty days. Because Baker presents no further evidence in support of his claim regarding denial of yard time, the court cannot conclude that a genuine issue of material fact exists which would preclude it from granting a motion for summary judgment.

### V. CONCLUSION [FN8]

> FN8. Because the court concludes that there exist no genuine issues of material fact with regard to the merits of Baker's claims, it need not address the issues of whether qualified immunity and the doctrine of respondeat superior protect the defendants.

For the foregoing reasons, the court concludes that the defendants are entitled to summary judgment

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 31015630 (D.Del.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

because Baker cannot establish his alleged constitutional violations.

**\*6** For these reasons, IT IS HEREBY ORDERED that:
1. The State Defendants' motion for summary judgment (D.I.22) is GRANTED.
2. CMS' motion for summary judgment (D.I.25) is GRANTED.
3. Judgement BE AND IS HEREBY ENTERED in favor of the Defendants.


D.Del.,2002.  
Baker v. Williams  
Not Reported in F.Supp.2d, 2002 WL 31015630 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:01CV00471 (Docket) (Jul. 10, 2001)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.