**Westlaw Download Summary Report for GOLDRING,DOUG 5288651**

| | |
|---|---|
| Date/Time of Request: | Wednesday, January 31, 2007 14:13:00 Central |
| Client Identifier: | DOJ |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 313 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1418790 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Briefs and Other Related Documents
Saahir v. HolliganN.D.Tex.,2004.Only the Westlaw citation is currently available.
United States District Court,N.D. Texas, Amarillo Division.
Jehaad Ame SAAHIR, Pro Se, a.k.a. James Loggins, Jr., TDCJ-CID # 291515, Previous TDCJ-CID # 225271 Plaintiff,
v.
Mary HOLLIGAN, Stuart Williams, Theresa Hendricks, Joseph Price, and TDCJ-ID, Defendants.
No. 2:01-CV-0144.

June 24, 2004.

Jehaad AME Saahir, Amarillo, TX, pro se.

REPORT AND RECOMMENDATION
AVERITTE, Magistrate J.
*1 Plaintiff JEHAAD AME SAAHIR, a.k.a. JAMES LOGGINS, JR., acting pro se and while incarcerated as a prisoner in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, Section 1983 complaining against the above-referenced defendants and has been granted permission to proceed in forma pauperis despite his previous accumulation of three "strikes" under the Prison Litigation Reform Act.

By his February 5, 2004, Amended Complaint, plaintiff claims his life and health are in imminent danger because of a job assignment that is deliberately indifferent to his serious medical needs. Plaintiff pleads he is a severe asthmatic and, although his HSM-18 [FN1] restricts him from exposure to hazardous chemicals, irritants and environmental pollutants, his work exposes him to Polyvinyl Chloride (PVC) and dangerous glues. Plaintiff states the PVC pellets, when melted, throw off "deadly hydrogen gas (chloride gas)" and that the grinders and other machines create a harmful dust. Plaintiff says he had to work with a white glue for which he was required to wear gloves and protective clothing to prevent contact but was never given any protective clothing. He further states Dr. Khandaria and Dr. Ridge recommended he not work around chemicals in March of 2001; nevertheless, plaintiff says, the advice of "non-medical" personnel is given more weight than that of the doctors.

FN1. An HS-18 or HSM-18 is a TDCJ-CID form showing any medically determined work limitations a prisoner may have.

Plaintiff alleges he received twelve disciplinary case for not working in the boot factory and, as a consequence, was reassigned to another job. He further states that a response to grievance # 2001157788 informed him he would not be reassigned to the boot factory but that he was later reassigned to the boot factory. Plaintiff alleges he appeared before the Unit Classification Committee to address the grievance but the committee disregarded the grievance and determined he could be assigned to the boot factory. Although plaintiff argues he doesn't have to wait until he is harmed in order to assert a valid claim, he contends that, on March 13, 2001, he was taken to a free world hospital because of the effects of chemical fumes in the boot factory.

Plaintiff seeks an injunction preventing his assignment to work in the boot factory, "monetary and punitive damages," a trial by jury, and an order expunging all disciplinary cases from his record which pertain to his refusal to work in the boot factory.

*SPEARS HEARING*

On March 9, 2004, an evidentiary hearing was conducted by the United States Magistrate Judge in the above-referenced cause pursuant to *Spears v. McCotter,* 766 F.2d 179 (5th Cir.1985), to determine whether service of process should issue.

At the *Spears* hearing, sworn testimony was received from plaintiff; Dr. Revell, the Northern Regional Medical Director; Cindy Harrel, Grievance Investigator III; and Joe Nunn, Warden of the Clements Unit.

Plaintiff testified that, since his assignment which led to the filing of this lawsuit, he had worked on the Desma machine, at the glue table and repair table, and as a janitor, trimmer, and bonder, but that his medical restrictions should prevent his assignment to the boot factory. He stated his medical restrictions

Case 1:04-cv-00011-SJM-SPB   Document 68-45   Filed 02/02/2007   Page 3 of 6

Not Reported in F.Supp.2d                                                                                         Page 2
Not Reported in F.Supp.2d, 2004 WL 1418790 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

were no work with chemicals, no environmental pollutants, no lifting more than 35 pounds, and no walking more than 200 yards. He said the environmental pollutants he encountered in the factory were dust from the grinders and fumes from hot glue and from melting PVC. Plaintiff complained he wasn't given protective gloves when he was using glue in the past and that he was constantly having breathing problems while working in the factory and could no longer engage in his regular activities.

*2 Warden Nunn testified that the boot factory had been inspected and passed OSHA requirements. He stated that, before assignment to a job, a prisoner's HSM-18 was reviewed along with the job site and the restrictions were discussed with a supervisor to decide whether the job fit with an inmate's medical restrictions.

Doctor Revell, a medical doctor licensed to practice in the State of Texas, testified that the air quality in the boot factory had been tested and found acceptable by United States standards for anyone. He stated that someone with an allergy might react to a specific allergen. Doctor Revell said plaintiff might have specific allergies to specific chemicals but that he did not appear to. He said plaintiff's last pulmonary function test was in the year 2003 and that plaintiff got good effect from his inhaler. He opined plaintiff suffered from borderline obstruction but had no sign of severe disease.

When asked to describe asthma, Dr. Revell responded that, due to the disease entity, bronchial tubes close down and obstruct air from the lungs. Irritants can include dust, exercise, or car emissions. He stated that an asthma attack could be fatal, but opined that plaintiff got adequate relief with use of his inhaler.

Plaintiff's medical records [FN2] were reviewed with Dr. Revell. He noted plaintiff has been seen regularly in chronic clinic for his asthma and stated that, from January of 2001 to the present, the only infirmary visit by plaintiff for asthma complaints was on May 28, 2003. He was treated with two puffs from his asthma inhaler and, after his condition improved, plaintiff's oxygen saturation reached 99% and he was returned to work.

FN2. The Court notes that plaintiff's prison and medical records are maintained under his birth name of James Loggins.

Concerning plaintiff's allegation that, on March 13, 2001, he was taken to a free world hospital because of the effects of chemical fumes in the boot factory, Dr. Revell, referring to plaintiff's clinic notes for that date, included in the copy of plaintiff's medical records submitted to the Court, noted plaintiff had complained of asthma that day and a pulmonary function test was performed, but he was sent to the Emergency Room for evaluation for a possible heart attack. The final diagnosis was costochondritis. Doctor Revell explained that asthma and costochondritis are not related and that costochondritis is usually caused by a viral infection of the cartilage. Doctor Revell also noted plaintiff had been sent to the hospital in 2002 for premature ventricular contractions and bigeminy.

When asked about plaintiff's April 15, 2003, classification committee history entry under "Comments" showing that the Unit Classification Committee had consulted him concerning plaintiff's work assignment, Dr. Revell stated they called him on occasion and agreed he had opined there was no reason plaintiff could not work in the boot factory.

When the Court asked plaintiff to point the Court to facts showing his doctors say he cannot or should not work in the boot factory, plaintiff responded that when working in the boot factory he is in constant distress from glue fumes. He said he had gone to the infirmary five times and now officers won't let him go to the infirmary but, instead, make him sit by a window. Plaintiff stated he didn't have any heat problems or hypertension before working in the boot factory and that his back was injured from working there. Further, he stated some other inmates with asthma had been removed from the boot factory for that reason. He contended a Dr. Khandaria and a Dr. Ridge had told him that, if he was being forced to work with chemicals, he shouldn't work there.

*3 The records of plaintiff's clinic notes for March 3, 2001 and March 22, 2001 were reviewed and the Court noted the entry for March 22, 2001 by Dr. Ridge recording plaintiff's complaints of working around chemicals in the boot factory and the doctor's notation that he agreed with plaintiff that he should not be working around chemicals. He also noted plaintiff was not having an asthma attack at that time.

JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.


entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir.1990), if it is frivolous,[FN3] malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C.1997e(c)(1). A *Spears* hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos,* 926 F.2d 480, 483 n. 4 (5th Cir.1991).[FN4]

> FN3. A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce,* 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

> FN4. *Cf, Green v. McKaskle,* 788 F.2d 1116, 1120 (5th Cir.1986) ( "Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

The Magistrate Judge has reviewed plaintiff's pleadings and has viewed the facts alleged by plaintiff in his February 5, 2004, Amended Complaint and the testimony received at the March 9, 2004 *Spears* hearing to determine whether plaintiff's complaint presents grounds for dismissal or should proceed to answer by defendants.

### THE LAW AND ANALYSIS

The Eleventh Amendment embodies "the fundamental principle of sovereign immunity [that] limits the grant of judicial authority in Art. III." *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 97-98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). The doctrine of sovereign immunity bars suit against a state agency because, in such a case, the State itself is the real party in interest. Such a lawsuit is barred regardless of whether it seeks damages or injunctive relief. *Id.,* 465 U.S. at 101-02. The eligibility of the Texas Department of Criminal Justice for Eleventh Amendment immunity is settled law in this circuit. *Harris v. Angelina County,* 31 F.3d 331, 338 n. 7 (5th Cir.1994); see, *Loya v. Texas Department of Corrections,* 878 F.2d 860, 861 (5th Cir.1989). Therefore, the Texas Department of Criminal Justice is not a "person" within the meaning of section 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 65-66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). Plaintiff's claim against defendant TDCJ-ID is barred by sovereign immunity and, thus, lacks an arguable basis in law and is frivolous. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

An unsafe working condition may violate the Eighth Amendment if it constitutes a substantial risk of serious injury to the inmate. A prisoner asserting a claim that conditions of confinement constitute cruel and unusual punishment must show deliberate indifference on the part of prison officials. *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The appropriate definition of "deliberate indifference" under the Eighth Amendment is "subjective recklessness as used in the criminal law." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins,* 27 F.3d 174 (5th Cir.1994). In this regard the Supreme Court has cautioned:

*4 [A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan,* 511 U.S. at 837-38, 114 S.Ct. at 1979. Further, medical records showing sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir.1995).

Supervisory officials may be held liable only if they (1) affirmatively participate in acts that cause constitutional deprivation, or (2) implement unconstitutional policies that causally result in plaintiff's injury. See, *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir.1987); see also *Grandstaff v. City of Borger,* 767 F.2d 161, 169-70 (5th Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987).

Plaintiff's claim against defendant HOLLIGAN is based on her decision, as a member of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1418790 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

classification committee, to assign plaintiff to work in the boot factory and her subsequent failure to prevent his reassignment there. Plaintiff's claim against defendant HENDRICKS is based on her position as the Captain responsible for disciplinary hearings officers and the determination by HENDRICKS or by officers under her supervision that plaintiff was guilty on his repeated disciplinary cases for refusing to work in the boot factory. Specifically, plaintiff complains HENDRICKS did not follow AD-370 by getting a statement from the medical department in connection with his disciplinary cases. Plaintiff's claim against defendant WILLIAMS is based on his position as supervisor of the boot factory and his supervision of plaintiff's work assignments while there. Plaintiff's claim against defendant PRICE is premised on his membership in the classification committee when it assigned plaintiff to work in the boot factory and his position as Warden responsible for operation and management of the unit and training and supervision of the officers.

Based on the testimony concerning plaintiff's medical records, the accuracy of which plaintiff does not contest, the condition of his asthma, and the approval obtained from Dr. Revell concerning plaintiff's job assignment, it is clear plaintiff cannot show HOLLIGAN, HENDRICKS, WILLIAMS, or PRICE knew of and disregarded an excessive risk to his health or safety. Plaintiff has been unable to allege any fact known to these defendants which indicates plaintiff's asthma was such that he should not work in the boot factory. In this respect, plaintiff has failed to show he was in imminent danger of serious physical injury at the time the instant suit was filed. He has also failed to state a claim against one or more defendants on which relief can be granted.

Further, as to any claim against a defendant in his or her supervisory capacity, plaintiff has utterly failed to allege any fact which shows any defendant implemented an unconstitutional policy which caused the alleged constitutional violation. *Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir.1987); *Douthit v. Jones,* 641 F.2d 345, 346 (5th Cir.1981) (*per curiam*). Consequently, plaintiff has failed to state a claim against any defendant in his or her supervisory capacity on which relief can be granted.

*5 As to plaintiff's claim that HENDRICKS failed to follow a prison regulation in connection with his disciplinary hearings, plaintiff has informed the Court that he was not successful in his habeas action concerning those disciplinary cases resulting in lost good-time. As for the disciplinary cases which did not involve a loss of good-time, in the wake of *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), plaintiff has no created liberty interest of the regulations of Texas Department of Criminal Justice-Correctional Institutions Division.

Plaintiff's claims against defendants HOLLIGAN, WILLIAMS, HENDRICKS, and PRICE lack an arguable basis in law and in fact and are, therefore, frivolous. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

CONCLUSION

Plaintiff has utterly failed to show his work in the boot factory places him in imminent danger of serious physical injury. Further, his allegations fail to state a claim of deliberate indifference by defendants and his claims lack an arguable basis in law and are frivolous.

For all the reasons set forth above, pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(c)(1), it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that the plaintiff has failed to allege facts showing he was in imminent danger of serious physical injury at the time this suit was filed and that the Civil Rights Complaint filed pursuant to Title 42, United States Code, section 1983, by plaintiff JEHAAD AME SAAHIR, a.k.a. JAMES LOGGINS, JR., be DISMISSED WITH PREJUDICE AS FRIVOLOUS and FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

The United States District Clerk shall mail a copy of this Report and Recommendation to plaintiff and to each attorney of record by certified mail, return receipt requested. Any party may object to the proposed findings and to the Report and Recommendation within fourteen (14) days from the date of this Order. Rule 72, Federal Rules of Civil Procedure, and Rule 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas. Any such objections shall be in writing and shall specifically identify the portions of the findings, recommendation, or report to which objection is made, and set out fully the basis for each objection. Objecting parties shall file the written objections with the Clerk of the Court and serve a copy of such objections on the Magistrate Judge and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00011-SJM-SPB   Document 68-45   Filed 02/02/2007   Page 6 of 6

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 2004 WL 1418790 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

on all other parties. The failure to timely file written objections to the proposed factual findings, legal conclusions, and the recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir.1996)(*en banc*).

*6 IT IS SO RECOMMENDED.

N.D.Tex.,2004.
Saahir v. Holligan
Not Reported in F.Supp.2d, 2004 WL 1418790 (N.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 2:01cv00144 (Docket) (Apr. 05, 2001)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.